# Frank v. Frank

*Cyril T. Garvey,* for plaintiff.

*Nathan Routman* and *Albert E. Acker,* for defendants.

McKAY, J., July 25, 1963.—Defendants have filed preliminary objections to a petition of plaintiff for a declaratory judgment. While the preliminary objections challenge the propriety of the procedure pursued by plaintiff in asking for a declaratory judgment, they go further and demur to the cause of action itself.

The parties, except defendants Louis Allen and Jeanette, Arnold and Dorothy Ella Frank, are part-

ners in a retail furniture business and do business under the name of Myer Frank, the senior partner.

Plaintiff requests that the court construe their partnership agreement to mean that he has the right to decide for himself whether he shall contribute toward the purchase of a deceased partner's share, and that the value of that share shall be fixed by arbitrators.[1] In their demurrer, defendants contend that the procedure of declaratory judgment is not appropriate, and that, even if it is appropriate, the agreement should be construed to mean that the senior partner, Myer Frank, rather than arbitrators, shall fix the value of the deceased partner's share.

The facts as set forth in the petition may be summarized as follows:

On January 1, 1952, Myer, Herman, Joseph and Edward Frank and Edward Rabb entered into a partnership agreement, a copy of which is attached to the petition. The agreement provides, inter alia, that the death of a partner does not dissolve the partnership.

On that date, the partners also purchased the interest of Arnold Frank and Dorothy Ella Frank in a former partnership and gave certificates of indebtedness of the partnership for them. Louis Allen is now the trustee for Arnold and Dorothy Ella Frank with respect to those certificates of indebtedness which will become due on January 1, 1967.

On March 11, 1961, Herman Frank, one of the partners, died, leaving to survive him his widow, Jeanette Frank, and the said Arnold Frank and Dorothy Ella Frank, his children, all of whom are beneficiaries under his will.

On or about June 6, 1961, Jeanette Frank served notice upon the remaining partners that she did not desire to have her husband's interest continue in the

---

[1] Plaintiff requests that other matters be judicially declared also, but the above is the principal request.

business and offered to sell that interest[2] to the remaining partners. The partners, other than plaintiff Edward Frank, have agreed to buy the interest of Herman Frank for $60,000, which amount is satisfactory to Jeanette Frank. In fact, $3,000 has been paid by the partners toward the purchase of this interest.

Plaintiff believes that $60,000 is an excessive amount and that the dispute on this point should be settled by three arbitrators under paragraph 19 of the partnership agreement. Defendants contend that the dispute should be resolved by Myer Frank as provided by paragraph 12(b) of the agreement.

In this case, the parties have tried for approximately two years to resolve the dispute as to how the valuation of the Herman Frank interest shall be ascertained, but have been unsuccessful. It is clear that they have a substantial controversy which hinders the operation of the business and that no other satisfactory remedy is available to them to settle their controversy. The facts are agreed upon and the only question is how certain words in their partnership agreement shall be construed. It is obvious that once this question is disposed of, the entire controversy will terminate.

The first question is whether the procedure of declaratory judgment is the appropriate one. The Uniform Declaratory Judgments Act[3] has been somewhat restricted by judicial interpretation. The circumstances under which a declaratory judgment should be entered are set forth in the case of McWilliams v. McCabe, 406 Pa. 644, as follows:

". . . (1) that a declaratory judgment proceeding is not an optional substitute for established and avail-

---

[2] It is not clear from the petition whether her husband's entire interest or whether only the wife's share in that interest is to be sold. We assume that it is the former.

[3] Act of June 18, 1923, P. L. 840, 12 PS §831.

able remedies; (2) that it should not be granted where a more appropriate remedy is available; (3) that it should not be granted unless compelling and unusual circumstances exist; (4) that it should not be granted where there is a dispute of facts, or such controversy may arise; and (5) that it should not be granted unless there is a clear manifestation that the declaration sought will be a practical help in terminating the controversy."

These principles were reiterated in the case of State Farm Mutual Automobile Insurance Company v. Semple, 407 Pa. 572.

We are satisfied that the remedy of declaratory judgment is available to plaintiff. Accordingly, we will proceed to examine the terms of the partnership agreement for the purpose of declaring which of the two suggested methods is to be applied to determine the amount of the fair value of the Herman Frank interest in the partnership.

The pertinent paragraphs of the agreement read as follows:

Paragraph 12(b):

"All disputes and questions whatsoever which shall enter during the Partnership or afterwards arise between the partners or their respective representatives, or between any partners or partner and the representative of any other or others, and touching these Articles or the construction or application thereof, or any clause or thing herein contained, or on any account, valuation or division of assets, debits, or liabilities to be made hereunder, or any act or omission of any partner, or any other matter in any way relating to the Partnership business or to the affairs thereof, or the rights, duties or liabilities of any person under these Articles, shall be referred to Myer Frank, herein referred to as the Senior Managing Partner, and his decision shall be final. If the said Myer Frank

shall not desire to act, or in event the said Myer Frank is no longer a partner, all such decisions shall be referred to the determination of three arbitrators, to be chosen, one by the complaining partner to this Agreement, one by the remaining partners, and one to be chosen by the such two arbitrators, and the decision and award of any two of the three arbitrators (in writing) shall be binding and final between the parties to this Agreement, and binding on them, and shall be carried out and performed by them."

Paragraph 19:

"The death of any partner shall not dissolve the partnership. The remaining partners shall continue to operate the said business and shall within a reasonable time after the death of such partner, cause to be made an accounting showing the correct and accurate amount of such deceased partner's interest in the said business or Partnership, and each of the partners hereto do severally bind themselves to provide, by Will, how their share in the Partnership shall be divided, and what share shall go to each of their heirs or devisees, and each of the said partners agree to appoint an executor and trustee for such heirs or devisees by their Will. And the remaining partners agree that they will operate the said business, including the interest of the deceased partner therein, to the very best of their ability, and agree to render to such trustee or executor a monthly statement, and pay to the trustee, in accordance to the Will of such deceased partner, a share of the profits from said Partnership entitled by such heir or heirs of such deceased partner. If the trustee and beneficiary of such deceased partner do not desire to continue their interest in the said Partnership, then the trustee or representative or the heir of such deceased partner, shall give ninety (90) days' notice to the remaining partners that they, or he, or she, desire to sell their interest in the Partner-

ship. This notice shall be in writing and by registered mail, and the partners then shall have the right and privilege to purchase such deceased partner's interest, or interest of any heir that so desires to sell, at a reasonable market value. Provided, that the surviving partners may elect not to purchase such share, in that event, they are to immediately give notice of this. Thereupon, the Partnership may be wound up. But, if the business is continued, the deceased partners' heirs or representatives may sell their interest in the said Partnership to a person fit and proper to carry on said business, one familiar with and capable of carrying on the furniture business, and a person of good reputation and character. In the event the remaining partners purchase the share of such deceased partner, they agree to purchase it at a fair and reasonable market value, first to be determined by the parties, if they can; if not, to be submitted to three arbitrators; one to be chosen by the seller, one by the purchaser, and the third to be chosen by the two arbitrators, and the decision of two of the three arbitrators as to the value of such deceased partner's share, shall be binding upon both the purchasers and the sellers. The purchase price shall be paid within two (2) years from the date of purchase, but the payments are to be made in twenty-four (24) equal monthly installments and to be paid monthly in advance, the first payment to be made upon the completion of the sale, and every payment thereafter monthly until the full amount is paid. Interest at the rate of six per cent (6%) shall be paid by the purchasers on the unpaid balances."

In the present instance, Jeanette Frank, upon the death of her husband, Herman Frank, obviously undertook to follow the procedure to sell his interest in the partnership as provided in paragraph 19 of the agreement. She gave a 90-day notice of such desire to the remaining partners, and the latter are apparently desirous of purchasing the interest.

All of the surviving partners except plaintiff, including Myer Frank, fixed the value of the deceased's share at $60,000, which was satisfactory to Jeanette Frank. Plaintiff, however, does not agree with the other surviving partners that that amount represents the reasonable value of Herman's interest. The question is then, how shall the fair value of that interest be determined?

As has been stated, plaintiff's contention is that paragraph 19 provides the method when it says that the reasonable market value shall first be determined by the parties if they can; otherwise it shall be submitted to three arbitrators. He construes this paragraph of the agreement to include himself as one of the "Parties" and claims that, since he does not agree, the valuation must be submitted to three arbitrators. In support of this view, he points out that paragraph 19 purports to deal specifically with the procedure to be followed upon the death of a partner for the sale of the deceased partner's interest; that Jeanette Frank so construed it when she gave the notice called for in paragraph 19; that paragraph 19 provides for only one method for settling disputes incident to the determination of the fair valuation, namely, the appointment of arbitrators; that paragraph 12(b), which defendants claim controls the issue, does not purport to deal with the subject of the sale of a deceased partner's interest at all, but is concerned with other disputes between the partners or their representatives; and that under the principle that when a specific provision is contained in an agreement along with a general one and the two differ, it is the specific provision which controls.

The difficulty which we find with this contention, however, is that, from reading paragraph 19, it appears that the only dispute as to fair and reasonable market value intended to be covered by the agreement

is one between all of the surviving partners on one hand and the representative or heirs of the deceased partner's interest on the other. It is these two groups that are intended to be the respective parties, for each of them, i.e., the "seller" and the "buyer" is to name an arbitrator, and the third arbitrator is to be chosen by the two named. Nowhere in paragraph 19 is there to be found language which indicates any intention that if there are more than one surviving partner or more than one heir or representative of decedent, each of these persons is a party or there are to be multiple arbitrators named, one by each of these persons. In other words, under paragraph 19, there are only two parties to a dispute as to the fair value of a deceased partner's interest: one, the seller, who would be expected to place a high value on the interest, and the other, the buyer, who would ordinarily value it as low as possible. This is the case irrespective of how many individual persons are included in the terms seller and buyer.

If, as in the present case, one of the surviving partners, who together are the "buyer" of the interest, cannot agree with the other surviving partners upon the reasonable market value, but the remaining partners and the seller do agree upon that value, there is no dispute at all as to the value of the interest between the "buyer" and "seller". It is rather among the partners who are together the "buyer". Obviously, this type of dispute is not the kind of dispute which paragraph 19 is intended to deal with.

It follows that the method of resolving any dispute as to the value of a deceased partner's interest is not to be found in paragraph 19, notwithstanding that paragraph purports to deal with the purchase of a deceased partner's share by the surviving partners in other respects.

This brings us to the contention of defendants that the provisions of paragraph 12(b) of the agreement are the ones that apply to any dispute among the surviving partners as to the value of the Herman Frank interest.

Looking at paragraph 12 as a whole, we note that 12(a) vests the management of the partnership business in Myer Frank, the senior managing partner, in all aspects of the partnership business. This was probably inserted because, as it was stated at the argument, Myer Frank is the father of most of the other partners and the business bears his name. Paragraph 12(b) then provides that *"all disputes and questions whatsoever* which shall enter during the partnership or afterwards arise *between the partners* or their respective representatives . . . and . . . *touching these articles* or the *construction or application thereof,* or any clause or thing herein contained or on any . . . valuation . . . of assets, debits or liabilities to be made hereunder . . . or any other matter in any way relating to the partnership business or the affairs thereof or the rights, duties or liabilities of any person under these articles, *shall be referred to Myer Frank . . .* and his decision shall be final."* (Italics supplied.)

It appears to us that the above-quoted language expressly requires that the dispute which has arisen here between plaintiff and his fellow surviving partners must be settled by Myer Frank. It is a dispute which has "entered during the partnership between the partners"; it "touches the construction and application of the partnership agreement"; it relates to the "rights of the plaintiff (any person) under the Articles". Hence, the reference of such a dispute to Myer Frank is mandatory.[4]

---

[4] It was stated at the argument that Myer Frank has already acted in the present dispute and that it was he who determined that the value of the Herman Frank interest was $60,000.

The terms of a partnership agreement are the law of the partnership which must be applied in all questions arising among the partners: O'Donnell v. McLaughlin, 386 Pa. 187.

In addition to the question of the method of determining the value of the deceased partner's interest, plaintiff has requested the court to determine other matters in dispute between the parties. We are of the opinion that some of these questions may well be within the field of advisory opinions, and we note further that most of them were not even referred to in the arguments or briefs of counsel. One of them, however, the second, should be considered. It requests the court to determine whether all of the interest of a decedent must be offered, or whether a part of the said interest may be offered and whether the notice of Jeanette Frank is sufficient.

As we have heretofore noted, we are in doubt at this time whether, under the facts averred in the petition, the entire interest of Herman Frank has been offered for sale by Jeanette Frank as representing not only herself but the other beneficiaries of the will as well, or whether she is merely representing herself and offering her own interest for sale. Further, since a copy of the will is not annexed to the petition, it does not appear what the amount of her interest is.

We received the impression from the arguments of counsel that it was the entire interest in the partnership [5] which Herman Frank died siezed of that is in question here, and we have dealt with the case on that basis. If we are wrong in this, and Jeanette Frank merely represented herself and has only offered her individual share of the Herman Frank interest, whatever that may be, it is our opinion that the same answer would be given to that question as that given

[5] Paragraph 13 states that she "offered to sell the, i.e., her husband's, interest."

to the principal question in this case with which we have dealt.

Paragraph 19 provides that "each partner shall provide by will what share of his interest in the partnership shall go to each of his heirs or devisees", and that a beneficiary or heir of the deceased partner shall under certain circumstances give the 90 days' notice that they, or he, or she desires to sell their interest in the partnership. Because of this provision, it follows that every heir or beneficiary has his own separate interest in the partnership which he or she may sell. Hence, it is not necessary for the whole interest of the decedent to be offered, and the notice of Jeanette Frank, even if it deals merely with her own interest in the partnership, is sufficient.

Accordingly, the following judgment is entered.

Now, July 25, 1963, it is ordered, adjudged and decreed as follows:

1. The partnership agreement, dated January 1, 1952, which is the subject of the litigation in the present case, is to be construed to mean that the dispute between plaintiff, Edward Frank, and defendants as to the method of evaluating the interest of the deceased partner, Herman Frank, or the interest of any one of the beneficiaries under his will, including Jeanette Frank, is to be resolved by Meyer Frank under the provisions of paragraph 12(b) of the partnership agreement.

2. The action of the surviving partners other than plaintiff in purchasing or agreeing to purchase the interest of the deceased partner, Herman Frank, in the partnership for $60,000, the valuation placed upon it by Myer Frank pursuant to paragraph 12(b) of the partnership agreement, or in purchasing any beneficiary's share of that interest at a valuation to be fixed by the said Myer Frank, is binding upon the partnership and all of the partners, including plaintiff.

3. The share of Jeanette Frank in the interest of her deceased husband Herman Frank's interest, may be offered for sale separately from the share of the other beneficiaries of Herman Frank.

4. The notice given by Jeanette Frank of her intention to sell, whether it is to sell the entire interest of the heirs of Herman Frank or only of herself, is sufficient.

5. The other prayers of the petition are denied.

### Exception

Now, July 25, 1963, plaintiff excepts to the foregoing adjudication and an exception is allowed.