IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nancy K. Yarnell,                          :
                 Appellant        :
                                   :
             v.                          :      No. 530 C.D. 2023
                                   :      Submitted: July 5, 2024
Centre County Grange                       :
Encampment & Fair                          :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE ELLEN CEISLER, Judge[1]
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT          FILED: January 13, 2025

        Nancy K. Yarnell (Yarnell) appeals an order of the Court of Common Pleas of Centre County (trial court) sustaining the preliminary objection of the Centre County Grange Encampment & Fair (Grange Fair) in the nature of a demurrer to her complaint. Upon review, we reverse and remand the matter to the trial court for further proceedings.

## Background

        On November 14, 2022, Yarnell filed a "Complaint for Declaratory Judgment" against Grange Fair on the basis of four legal theories: breach of contract (Count I), breach of implied-in-fact contract (Count II), breach of implied-in-law contract (Count III), and tortious denial of a public accommodation (Count IV). The complaint averred that since 1874, Grange Fair has hosted an annual fair in Centre Hall, Pennsylvania. Among the available amenities are "tent sites where, for a fee,

---

[1] The Court reached the decision in this case prior to the conclusion of Judge Ceisler's service on the Commonwealth Court.

lessees may erect tents and canopies for day use during the [f]air." Complaint, ¶9; Reproduced Record at 3a (R.R. __). The number of tent sites is limited, and there is a waiting list of persons seeking to lease tent sites. Complaint, ¶¶11-12; R.R. 4a. As such, Grange Fair has stopped accepting requests for tent sites. Complaint, ¶13; R.R. 4a. "Tent sites are often passed down from one generation to the next in the same family" as "Legacy Sites." Complaint, ¶14; R.R. 4a. In fact, "non-Legacy Sites available for lease are rare." Complaint, ¶15; R.R. 4a. It is understood that leases to Legacy Sites "may be renewed annually" through the "annual reservation process." Complaint, ¶16; R.R. 4a.

The complaint alleged that Yarnell's parents first leased a tent site (Yarnell Site) in 1963 and continued to do so until their death. At that point, "all rights and interests in and to the Yarnell Site passed to [] Yarnell and her sister," who continued to lease the Yarnell Site every year. Complaint, ¶21; R.R. 5a. "Based on a course of dealing, the Yarnell family had a reasonable expectation that the Yarnell Site could be leased annually during the [f]air." Complaint, ¶20; R.R. 5a. At no time has Yarnell or a member of her immediate family violated the fair rules or engaged in disruptive or inappropriate behavior at the tent site. In 2018, however, Grange Fair refused to allow Yarnell to renew the lease, without explanation. The complaint alleged that Grange Fair did so in retaliation for a civil action commenced by Yarnell's nephew, Wayne "Skip" Dreibelbis, Jr., against Grange Fair and its personnel.[2]

Count I of the complaint asserts that the "established practices" and "the course of dealing" between the Yarnell family and Grange Fair conferred on Yarnell

---

[2] *See Dreibelbis v. Centre County Grange Encampment and Fair* (Pa. Cmwlth., No. 3 C.D. 2023, filed October 24, 2024).

an "enforceable contractual right to lease" a tent site every year at the fair. Complaint, ¶40; R.R. 8a. By refusing to renew the lease for the Yarnell Site, Grange Fair is "breaching its contractual obligations" to Yarnell and "interfering with her property interest." Complaint, ¶41; R.R. 8a. In the alternative, Counts II and III of the complaint assert that Grange Fair violated Yarnell's "implied-in-fact contractual right" and "implied-in-law contractual right" to lease the Yarnell Site each year. Complaint, ¶¶43, 46; R.R. 9a-10a. Count IV of the complaint asserts that Grange Fair, "a quasi-governmental body," has wrongfully denied Yarnell access to the Yarnell Site, thereby denying her access to a public accommodation. Complaint, ¶49; R.R. 11a. The complaint seeks a declaratory judgment that Yarnell has a legally cognizable interest in the annual renewal of the Yarnell Site.

In response, Grange Fair filed a preliminary objection in the nature of a demurrer[3] to each count contained in the complaint.

**Trial Court Opinion**

By order dated April 25, 2023, the trial court sustained Grange Fair's demurrer.

The trial court held that the complaint did not plead facts sufficient to show that Grange Fair had a contractual obligation to renew the lease to a tent site. Although the Yarnell family had leased the Yarnell Site for over 60 years, the complaint did not allege that Grange Fair "made any outward and objective manifestation of assent" to a lease that is "perpetually renewable." Trial Court Op.

---

[3] Pennsylvania Rule of Civil Procedure 1028(a)(4) provides:

(a) Preliminary objections may be filed by any party to any pleading and are limited to the following grounds:

. . . .

(4) legal insufficiency of a pleading (demurrer)[.]

PA.R.CIV.P. 1028(a)(4).

3

at 4; R.R. 97a. It concluded that Grange Fair's annual invitation to renew a lease for a tent site was an offer to enter a contract. Trial Court Op. at 5; R.R. 98a. Even if the facts in the complaint can be construed to show Grange Fair's intention to create a perpetual lease, the trial court opined that such a contract either is "not favored in law," Trial Court Op. at 5; R.R. 98a (citing *Scott v. Spezialetti*, 72 Pa. D. & C. 2d 269, 272 (1975)), or "is unenforceable." Trial Court Op. at 5; R.R. 98a (citing 8A SUMM. PA. JUR. 2d PROPERTY §26:248 (2nd edition, updated October 2024).[4] The trial court observed that its holding was consistent with the one reached in *Marroquin v. Centre County Grange Encampment and Fair* (C.C.P. Centre Cnty., No. 2019-1996, filed June 8, 2020), which involved "a similar factual situation." Trial Court Op. at 6; R.R. 99a.

The trial court next held that the complaint did not plead a claim for breach of implied-in-law contract because Grange Fair was not unjustly enriched by refusing to renew the lease to the Yarnell Site. Finally, the trial court rejected the claim for tortious denial of public accommodation because the complaint did not allege that Grange Fair had denied Yarnell access to the fair. The trial court warned that the public accommodation count "would open the gates for every individual who fails to lease a tent site to seek remedy for that." Trial Court Op. at 6; R.R. 99a.

The trial court dismissed Yarnell's complaint with prejudice, and Yarnell appealed to this Court.

---

[4] Chapter 26, Section 249 of the Summary of Pennsylvania Jurisprudence Property is titled "Renewal of lease by co-lessees." The relevant quoted language is found in Section 248, "Validity of perpetual lease renewals." 8A SUMM. PA. JUR. 2d PROPERTY §26:248 (2nd edition, updated October 2024).

## Appeal

On appeal,[5] Yarnell argues that the trial court erred in sustaining Grange Fair's demurrer.[6] The complaint states a claim for breach of contract because it alleges "a long-established course of dealing supporting [Yarnell's] qualified right to renew the Yarnell Site" provided that she had not violated any of the Grange Fair's rules. Yarnell Brief at 17. Because the complaint alleges that Yarnell has not violated Grange Fair's rules, she is entitled to renew the lease for the Yarnell Site. In concluding that the renewal of the lease for the tent site was discretionary, not automatic, the trial court did not rely on the factual averments in the complaint, as is required. Instead, the trial court relied upon averments in Grange Fair's preliminary objections and facts recited in *Marroquin* (C.C.P. Centre Cnty., No. 2019-1996, filed June 8, 2020). Yarnell asks this Court to reverse the trial court and remand the matter to the trial court to "proceed on the [c]omplaint or to afford [] Yarnell the opportunity to re-plead." Yarnell Brief at 12.

---

[5] Our review of a trial court's order granting preliminary objections determines whether the trial court committed legal error or abused its discretion. *Palmer v. Bartosh*, 959 A.2d 508, 512 n.2 (Pa. Cmwlth. 2008).

[6] Yarnell's brief raises four questions for this Court to consider. They are, in sum: (1) whether the trial court erred by considering matters outside the complaint in granting the preliminary objections and by concluding that the leases are only renewed upon Grange Fair's invitation via letter and are not automatic; (2) whether the trial court erred by failing to accept as true the factual averments set forth in the complaint; (3) whether the trial court erred by concluding that the complaint did not plead that Grange Fair expressed its intention to create a presumption of automatic renewability, which Yarnell had an absolute and unilateral right to exercise; and (4) whether the trial court erred in its interpretation, application, and reliance on *Marroquin* (C.C.P. Centre Cnty., No. 2019-1996, filed June 8, 2020). Yarnell Brief at 6, Statement of the Questions Involved.

Notably, Yarnell's brief focuses on the trial court's rulings on the claims for breach of express contract and contract implied in fact (Counts I and II). The brief does not develop any argument challenging the trial court's dismissal of the claims for breach of contract implied in law (Count III) and tortious denial of public accommodations (Count IV). Therefore, we need not determine whether Yarnell's complaint is sufficient in stating claims for breach of contract implied in law and tortious denial of public accommodations.

Grange Fair responds that the trial court properly dismissed the complaint because the facts in the complaint did not establish an enforceable agreement between Yarnell and Grange Fair. Yarnell did not attach a lease or a written agreement to her complaint or allege unjust enrichment by Grange Fair. The complaint does not allege that Grange Fair invited Yarnell to renew the lease and then refused to honor that invitation. Thus, it does not state a breach of contract.

**Analysis**

"[A] demurrer tests the legal sufficiency of the complaint." *Insurance Adjustment Bureau, Inc. v. Allstate Insurance Company*, 905 A.2d 462, 468 (Pa. 2006) (*Allstate Insurance Company*). A trial court may sustain a demurrer and dismiss a claim "only when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint." *Id*. "In determining the merits of a demurrer, all well-pleaded, material facts set forth in the complaint and all inferences fairly deducible from those facts are considered admitted and are accepted by the trial court as true; conclusions of law are neither deemed admitted nor deemed true." *Id*. "In reviewing a trial court's decision on a demurrer, the appellate court uses these same standards." *Id*.

Where, as here, the complaint asserts a claim for breach of contract, the plaintiff must allege that "there was a contract, the defendant breached it, and plaintiff[ ] suffered damages from the breach." *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010). An express contract differs from a contract implied in fact only in its formation. An express contract is formed when the terms of an agreement are declared by the parties by written or verbal communication. *Ingrassia Construction Company, Inc. v. Walsh*, 486 A.2d 478, 483 n.7 (Pa. Super. 1984). On the other hand, a contract implied in fact arises when the intent of the parties is

6

inferred from their acts or circumstances. *Commonwealth Federal Savings and Loan Association v. Pettit*, 586 A.2d 1021, 1024 (Pa. Cmwlth. 1991). *See also Walsh*, 486 A.2d at 483 (quoting *Pollock Industries, Inc. v. General Steel Castings Corporation*, 201 A.2d 606, 610 (Pa. Super. 1964)) (an implied-in-fact contract "arise[s] under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract"). In either type of contract, there must be mutual assent in order to bind both parties to a contract. *John Spearly Construction, Inc. v. Penns Valley Area School District*, 121 A.3d 593, 607 (Pa. Cmwlth. 2015).

Here, the complaint averred that there is "an implicit agreement and understanding" between Grange Fair and Yarnell that the lease to the Yarnell Site would "be renewed annually" at Yarnell's option. Complaint, ¶16; R.R. 4a. Under the "annual reservation process" and payment of "a fee, lessees may erect tents and canopies for day use during the [f]air." Complaint, ¶¶9, 16; R.R. 3a-4a. The complaint further alleged that "[t]ent sites are often passed down from one generation to the next in the same family," as "effectively, Legacy Sites." Complaint, ¶14; R.R. 4a. Accordingly, Yarnell's family had been "afforded the opportunity to renew its tent site rental each year" since 1963, and, based on this "course of dealing," Yarnell had a "reasonable expectation that the Yarnell Site could be leased annually during the [f]air." Complaint, ¶¶19-20; R.R. 5a. The complaint averred that in 2018, Grange Fair refused to renew the lease for the Yarnell Site without explanation. At no time has Yarnell or her family violated the fair rules or engaged in disruptive or inappropriate behavior.

Accepting the facts set forth in the complaint and all inferences fairly deducible therefrom as true, we conclude that the complaint has pleaded facts

sufficient to show the existence of an implied-in-fact contract that is guaranteed renewable, so long as the Legacy Site holder pays the fee and does not violate the rules of Grange Fair. This is analogous to a guaranteed renewable insurance contract or policy, under which the insurer agrees not to exercise underwriting discretion at renewal. Instead, the insurer sends a renewal notice and a premium invoice; only if the premium is not paid, is the policy non-renewed. *See generally Yoder v. American Travellers Life Insurance Company*, 814 A.2d 229, 230 (Pa. Super. 2002) (a "guaranteed renewable" policy is one "renewed each year as long as the premiums, which were subject to state-approved yearly increases, were paid"); *Consedine v. Penn Treaty Network America Insurance Company*, 63 A.3d 368, 443 (Pa. Cmwlth. 2012) (insurer cannot refuse to renew guaranteed renewable policy for reasons of policyholder decline in health).

Here, the complaint has pleaded facts to show the existence of a similar contract, one that is guaranteed renewable for non-discretionary reasons. The complaint averred that Grange Fair has agreed to renew Legacy Sites, so long as the tent site holder pays the annual fee and obeys the rules of the fair. Because Yarnell has not violated the fair rules, Grange Fair is "breaching its contractual obligations" "to renew the lease on the Yarnell Site[.]" Complaint, ¶41; R.R. 8a. The complaint sought a declaratory judgment that "Yarnell is entitled to renew the lease for the Yarnell Site[.]" Complaint at 8; R.R. 9a.

In sustaining the demurrer, the trial court held that Grange Fair's "annual invitation" to tent holders was an offer to enter a contract. Trial Court Op. at 5; R.R. 98a. However, the complaint did not allege that Grange Fair issued an "annual invitation." To the contrary, the complaint alleged that under "an implicit agreement and understanding" that existed between Grange Fair and tent site users,

8

the tent sites "*may* be renewed annually." Complaint, ¶16; R.R. 4a (emphasis added). The trial court read the word "may" to mean that Grange Fair had the choice not to renew. However, this language can also be construed to mean that it was Yarnell who had the choice not to renew the lease. In determining the merits of a demurrer, "all well-pleaded, material facts set forth in the complaint *and all inferences fairly deducible from those facts are considered admitted and are accepted by the trial court as true*[.]" *Allstate Insurance Company*, 905 A.2d at 468 (emphasis added). In short, the trial court should have read the allegation in favor of Yarnell, not in favor of Grange Fair.

A trial court may sustain a demurrer and dismiss a claim "only when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint." *Id*. We cannot conclude, clearly and without a doubt, that Yarnell has no legally cognizable interest in the annual renewal of the lease to the Yarnell Site, based on the facts alleged in the complaint.

The trial court based its decision on the complaint's choice of word, *i.e.*, "may." Because this can be revised in an amended pleading, the trial court also erred in dismissing the complaint with prejudice. *Massaro v. McDonald's Corporation*, 280 A.3d 1028, 1035 n.2 (Pa. Super. 2022) ("[A] complaint should only be dismissed with prejudice where the plaintiff has failed to assert facts which may give rise to a cognizable cause of action, *and an amendment of the claims would be futile*." (emphasis added)). It cannot be said that a pleading amendment would be futile, to the extent one accepts the trial court's construction of "may."

The trial court relied on Chapter 26, Section 248 of the Summary of Pennsylvania Jurisprudence Property, 8A SUMM. PA. JUR. 2d PROPERTY §26:248 (2nd edition, updated October 2024), for the proposition that a "perpetual lease" is

generally unenforceable. Chapter 26, Section 248, titled "Validity of perpetual lease renewals," states, as follows:

> *A lease that provides that it will automatically renew itself from year to year creates a perpetual lease and is unenforceable,*[] *where the tenant has the absolute, unilateral right to continue in possession in perpetuity, regardless of the wishes of the landlord* [(citing *Hall's Motor Transit Company v. New Penn Motor Express*, 53 Pa. D. & C. 2d 409 (1971))]. However, although covenants for continued renewals tending to create a perpetuity are not favored in law and leases will not be construed to give them that effect unless the intention is expressed in unequivocal terms, a lease for a term certain, and thereafter to continue at the will of the lessee, may be enforceable [(citing, *inter alia*, *Scott*, 72 Pa. D. & C. 2d 269)].

8A SUMM. PA. JUR. 2d PROPERTY §26:248 (2nd edition, updated October 2024) (emphasis added) (footnotes omitted).

In *Hall's Motor Transit Company*, 53 Pa. D. & C. 2d at 410 (emphasis in original), the lease at issue stated that "if the said second party (with consent of the first party) shall continue in possession of the said premises after the expiration of said term [of three years], then this agreement shall become immediately operative for *another like term . . .* , as if a *new agreement* identical with this had been executed by the said parties for said succeeding *term or terms*." The tenant, after expiration of the second term of the lease, continued in possession of the premises for one year and then vacated the premises. At issue was whether the landlord was entitled to a judgment for the remaining two years of the rental term. The common pleas court found in favor of the landlord and rejected the tenant's argument that the lease provision created "an estate in perpetuity." *Id*. at 413.

By contrast, in *Scott*, 72 Pa. D. & C. 2d 269, the landlord sued the tenant in trespass, alleging that the tenant prevented him from occupying certain real estate

10

under a lease agreement. The lease at issue "automatically renew[ed] itself from year to year, with the lessor being bound thereby[,]" and the lessor had no right to terminate the lease other than under limited circumstances. *Id.* at 271. The common pleas court found the perpetual lease to be unenforceable. The court reasoned that, while "a lease for a term certain, and thereafter to continue at the will of the lessee, may be enforceable," *id.* at 272 (quoting *Sterle v. Galiardi Coal & Coke Company*, 77 A.2d 669, 672 (Pa. Super. 1951)), the lessee in *Scott* had more than a "right to renew[;]" "the renewal was automatic without any notice or action by any party to the other." *Scott*, 72 Pa. D. & C. 2d at 272.

A "perpetual lease" will be found unenforceable "where the tenant has the absolute, unilateral right to continue in possession in perpetuity, regardless of the wishes of the landlord." 8A SUMM. PA. JUR. 2d PROPERTY §26:248 (2nd edition, updated October 2024). Here, the complaint did not aver that Yarnell has "the absolute, unilateral right to continue in possession" of the tent site "in perpetuity," and Yarnell does not so argue. The complaint averred that there is an "annual reservation process," through which Yarnell leased, and occupied, the Yarnell Site "for day use during the [f]air." Complaint, ¶¶9, 16; R.R. 3a-4a. Yarnell did not continue in possession of the said site after the fair. This distinguishes the instant case from *Hall's Motor Transit Company* and *Scott*.

The trial court's reliance on *Marroquin* (C.C.P. Centre Cnty., No. 2019-1996, filed June 8, 2020), is likewise misplaced. In that case, the plaintiffs requested assignment of tent No. 10 in North Lot 1 after Grange Fair disqualified the previous tent holder for misconduct. After Grange Fair declined the plaintiffs' request, they sued for breach of contract. The trial court granted Grange Fair's demurrer and dismissed the plaintiffs' complaint. Grange Fair admitted that the previous tent

11

holder had leased a tent at the fair for many years; however, that course of conduct did not confer an interest in that tent site upon the plaintiffs. The trial court then went on to observe that leases that automatically renew are perpetual leases and generally disfavored. It, therefore, concluded that Grange Fair's invitation to renew should be construed as only an offer to enter into an agreement.

The plaintiffs in *Marroquin* tried to assert the contract rights of the disqualified tent holder; they were not tent holders. By contrast here, Yarnell was a tent holder. She asserts that given the course of dealing since 1963, Grange Fair agreed to renew leases to Legacy Sites so long as the fees were paid and the fair rules were followed. In considering a demurrer, "a court is limited to the facts in the pleading." *Firetree, Ltd. v. Fairchild*, 920 A.2d 913, 917 (Pa. Cmwlth. 2007). The trial court erred in considering the facts pleaded in *Marroquin* to consider Grange Fair's demurrer.

### Conclusion

Based upon the facts alleged in the complaint and all inferences fairly deducible therefrom, which we must accept as true, we cannot conclude that Yarnell had no legally cognizable interest in the annual renewal of the Yarnell Site. Therefore, we reverse the trial court's April 25, 2023, order sustaining Grange Fair's demurrer and remand the matter to the trial court for further proceedings. On remand, the trial court shall issue an order directing Grange Fair to file an answer to Yarnell's complaint.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nancy K. Yarnell,                      :
                    Appellant          :
                                       :
            v.                         :      No. 530 C.D. 2023
                                       :
Centre County Grange                   :
Encampment & Fair                      :

# **O R D E R**

AND NOW, this 13th day of January, 2025, the order of the Court of Common Pleas of Centre County, dated April 25, 2023, is hereby REVERSED. The matter is REMANDED to the Court of Common Pleas of Centre County for further proceedings consistent with this opinion.

Jurisdiction relinquished.


_____
MARY HANNAH LEAVITT, President Judge Emerita